

U.S. Department of Justice

United States Attorney
District of Maryland
Northern Division

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2012 APR -3 A 10: 14

CLERK'S OFFICE
AT BALTIMORE

BY. _____

Rod J. Rosenstein
United States Attorney

P. Michael Cunningham
Assistant United States Attorney

36 South Charles Street
Fourth Floor
Baltimore, Maryland 21201

DIRECT: 410-209-4884
MAIN: 410-209-4800
FAX: 410-962-3091
TTY/TDD: 410-962-4462
michael.cunningham@usdoj.gov

March 7, 2012

Brendan A. Hurson, Esquire
Office of the Federal Public Defender
Tower II, Suite 1100
100 South Charles Street
Baltimore, Maryland 21201-2705

Re:     *Unites States v. Joseph Anthony Kallash*
Criminal No.  JKB-11-0673

Dear Mr. Hurson:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 19, 2012, it will be deemed withdrawn. The terms of the agreement are as follows:

Offense of Conviction

1.     The Defendant agrees to plead guilty to the Count One of the Indictment which charges him with Sexually Exploiting a Minor for the Purpose of Producing Visual Depictions of a Minor Engaged in Sexually Explicit Conduct, in violation of 18 U.S.C. § 2251(a). The Defendant admits that he is, in fact, guilty of this offense and will so advise the Court.

Elements of the Offense

2.     The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

That on or about the dates specified in the Indictment in the District of Maryland, the Defendant:

1

        a.      Knowingly employed, used, persuaded, induced, enticed or coerced a minor to engage in sexually explicit conduct;

        b.      For the purpose of producing a visual depiction of such conduct;

        c.      And the Defendant had reason to know that the materials used to produce the visual depictions were transported in interstate and foreign commerce.

    3.      <u>Penalties</u>

        a.      The sentence provided by statute for the offense to which your client is pleading guilty is as follows: not less than fifteen (15) years and not more than thirty (30) years imprisonment, a $250,000 fine, and supervised release for 5 years to life. In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing. This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1] If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise. The Defendant understands that if he serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release. The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

        b.      The defendant understands and agrees that as a consequence of his conviction for the crimes to which he is pleading guilty, he will be required to register as a sex offender in the place where he resides, where he is an employee, and where he is a student, pursuant to the Sex Offender Registration and Notification Act (SORNA), and the laws of the state of his residence. Failure to do so may subject him to new charges pursuant to 18 U.S.C. § 2250.

<u>Waiver of Rights</u>

    4.      The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

        a.      If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

---

[1]      Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

b.      If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.      If the Defendant went to trial, the government would have the burden of proving the Defendant guilty beyond a reasonable doubt.  The Defendant would have the right to confront and cross-examine the government's witnesses.  The Defendant would not have to present any defense witnesses or evidence whatsoever.  If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

d.      The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify.  If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify.

e.      If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him.  By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

f.      By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence.  By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case.  Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

g.      If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

h.      By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status.  The Defendant recognizes that if he is not a citizen of the United States, pleading guilty may have consequences with respect to his immigration status.  Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including his attorney or the Court, can predict with certainty the effect of a conviction on immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any potential immigration consequences.

3

Advisory Sentencing Guidelines Apply

5.　　The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Factual and Advisory Guidelines Stipulation

6.　　This Office and the Defendant understand, agree and stipulate to the Statement of Facts set forth in Attachment A hereto which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

　　　　a.　　The base offense level is thirty-two (32) pursuant to U.S.S.G. §2G2.1(a).

　　　　b.　　Pursuant to U.S.S.G. §2G2.1(b)(1)(B), there is a two (2) level increase because the victim in this case was over 12 but under 16 years old at the time of the offense.

　　　　c.　　Pursuant to U.S.S.G. §2G2.1(b)(3), there is a two (2) level increase because the offense involved distribution.

　　　　d.　　Pursuant to U.S.S.G. §2G2.1(b)(2)(A), there is a two (2) level increase because the offense involved the commission of a sexual act or sexual contact.

　　　　Before any adjustment for acceptance of responsibility, the adjusted offense level is thirty-eight (38).

7.　　This Office does not oppose a two-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct. This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional one-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty. This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

**The final adjusted offense level, therefore, is thirty-five (35).**

4

8.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he derived a substantial portion of his income.

9.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range, there are no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines that will be raised or are in dispute.

Obligations of the United States Attorney's Office

10.     At the time of sentencing, the United States Attorney's Office will recommend a sentence of 180 months, plus a lifetime period of supervised release. This Office will also move to dismiss the remaining counts of the indictment.

11.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct.

Waiver of Appeal

12.     In exchange for the concessions made by this Office and the Defendant in this plea agreement, this Office and the Defendant waive their rights to appeal as follows:

a.      The Defendant knowingly waives all right, pursuant to 28 U.S.C. §1291 or otherwise, to appeal the Defendant's conviction.

b.      The Defendant and this Office knowingly waive all right, pursuant to 18 U.S.C. § 3742 or otherwise, to appeal whatever sentence is imposed (including the right to appeal any issues that relate to the establishment of the advisory guidelines range, the determination of the defendant's criminal history, the weighing of the sentencing factors, and the decision whether to impose and the calculation of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except as follows: (i) the Defendant reserves the right to appeal any term of imprisonment to the extent that it exceeds the U.S.S.G. range provided for at adjusted offense level 35, taking into consideration the Defendant's Criminal History Category; (ii) and this Office reserves the right to appeal any term of imprisonment to the extent that it is below the statutory mandatory minimum sentence for the crime.

c.      Nothing in this agreement shall be construed to prevent the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), or from appealing from any decision thereunder, should a sentence be imposed that resulted from arithmetical, technical, or other clear error.

d.      The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

13.      The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. §3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Court Not a Party

14.      The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

## Forfeiture

15.     The defendant agrees to forfeit all right, title and interest in the property seized by law enforcement authorities from his residence on or about July 1, 2011, including, but not limited to:

> a Dell Laptop computer, Model Studio 1535, S/N: 5SWJ3H1, with accompanying Western Digital 500 gb external hard disk drive, S/N WCAV9C424459T; a Dell Inspiron computer, model M5010, S/N 6PG6YM1; a Sprint Samsung cell phone, model SPH-M810; and a Sprint HTC camera cellphone; a blue, 2006 Hyundai Elantra, displaying Maryland tag 2FKX77; any and all other property seized from the defendant's residence, vehicle or person on or about July 1, 2011, pursuant to authorized search warrants; or any other property that constitutes or is traceable to gross profits or other proceeds obtained, directly or indirectly, as a result of the offenses in Counts One through Six of the Indictment.

The Defendant further agrees to take whatever steps are necessary to pass clear title to those properties to the United States.

## Restitution

16.     For purposes of sentencing, the offense of conviction constitutes a crime of violence pursuant to 18 U.S.C. § 16. Therefore, under 18 U.S.C. §§ 3663A, 2259, and 3771, any identified victim is entitled to mandatory restitution. The restitution could include the medical bills, compensation for time missed from work, as well as counseling costs (including travel) for any of the victims related to the incident, if any such costs exist or are reasonably projected. 18 U.S.C. §§2259, 3663A(b)(2) and (4). The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement. Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons Inmate Financial Responsibility Program.

## Entire Agreement

17.     This letter supersedes any prior understandings, promises, or conditions between this Office and the Defendant and, together with the Sealed Supplement, constitutes the complete plea agreement in this case. The Defendant acknowledges that there are no other agreements, promises,

undertakings or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement and none will be entered into unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By: _____

P. Michael Cunningham
Assistant United States Attorney

I have read this agreement, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

3-13-12
Date

Joseph Anthony Kallash

I am Mr. Kallash's attorney. I have carefully reviewed every part of this agreement, including the Sealed Supplement, with him. He advises me that he understands and accepts its terms. To my knowledge, his decision to enter into this agreement is an informed and voluntary one.

3/13/12
Date

Brendan A. Hurson, Esquire

8

## ATTACHMENT A – STATEMENT OF FACTS

*The undersigned parties hereby stipulate and agree that if this case had proceeded to trial the government would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Joseph Anthony Kallash, age 31, was a resident of Owings Mills, MD.  On June 29, 2011, Baltimore County Police Investigators received information from a 15 year old female, KG, that revealed a history of sexual contact on the part of Joseph Kallash.  KG told investigators that she met Joseph Kallash through her then 15 year old female friend, CW, on Facebook, where Kallash had a personal site.  KG initially thought Kallash was 17 years old.  KG advised that in November of 2010, she, CW, and another minor female friend, TL, skipped school.  Kallash picked the three girls up at an Exxon gas station located near their high school and went back to his residence at 59 Straw Hat Rd., Apt. 1A, Owings Mills, MD 21117 to "hang out."  Kallash and the three girls drank alcohol and the girls smoked marijuana that the girls brought to the residence.  All four watched a movie in the living room, where Kallash began to become physically intimate with KG.  After some foreplay in the room where all four people were seated, Kallash and KG went to the bedroom and they had sexual intercourse.

Not long after this incident, KG discovered through Facebook that Kallash was really 30 years old.  KG and Kallash continued communicating until February of 2011, mainly through text messages.  At one point, Kallash sent KG one or two pictures of his penis and KG took a sexually suggestive picture and sent it to Kallash's cell phone.

After a period of no contact, KG contacted Kallash requesting that he purchase cigarettes for her.  During that conversation, Kallash asked KG if she would be interested in having sexual relations with him.  When she declined, Kallash asked if she had a sister.  KG responded by noting that she did have a 9 year old sister who was sexually active.  Kallash expressed interest in having sexual relations with the 9 year old.  After the conversation, KG contacted the police to alert them to Kallash's request.

On June 30, 2011, officers from Baltimore County assumed KG's identity and communicated with Kallash.  During the conversation, authorities also assumed the identity of KG's 9 year old sister and began a conversation about a possible sexual encounter between Kallash and the 9 year old.  The conversation included explicit references to sexual acts, including Kallash asking "would you want me to go down on you, would you want to give a blow job, would you want to end up having sex?  Anything like that."  Kallash continued by explaining that "going down" meant "licking and using my tongue on your pussy :P"

After the 9 year old agreed to meet Kallash and Kallash described the meeting spot and the type of vehicle he would be driving, the conversation ended.  When Kallash arrived at the meeting spot (a local restaurant) on July 1, 2011, he was arrested by authorities.

Subsequent to that arrest, Kallash was interviewed by Baltimore County Police Detectives

at the Child Advocacy Center.  After waiving his *Miranda* rights, Kallash agreed to be interviewed and admitted that he intended to meet the 9 year old and also admitted to discussing sexual relations with her.  He also admitted to having sex with KG, but said he did not know she was 14 or 15 until after they had sex.

On June 29, 2011, authorities interviewed CW.  CW told investigators that she met Kallash through Facebook and stated that in August of 2010, she and Kallash had sex at his apartment.  She corroborated KG's account of the November, 2010 sexual encounter between KG and Kallash.

When interviewed on July 1, 2011, Kallash was asked about CW.  He denied having sexual intercourse with her, but admitted to some sexual contact and also admitted that she asked him to take naked pictures of her in August of 2010 with his cell phone camera.  He admitted to taking at least five photographs of CW and described three in detail: 1) CW fully clothed; 2) CW's breasts; and 3) CW inserting a vibrator into her vagina.  He admitted to saving the photographs to his laptop computer in a folder with CW's name.  He also admitted to sending the pictures to CW at her request.

Authorities secured a search and seizure warrant for Mr. Kallash's residence and seized the following items:

1) Dell Studio Laptop, model PP33L, service tag # 5SWJ3H1

2) Dell Inspiron Laptop, model M5010, service tag # 6PG6YM1

3) Western Digital Hard Drive, 500 GB external hard drive, serial # WCAV9C424459T

4) Apple Ipod, 8 GB,serial # 8N83702Y2C7

5) Sprint Samsung Cameraphone,  FCCID # A3LSPHM810

During a forensic preview of the above items, a folder was located with numerous images of suspected pornography containing participants of undetermined ages.  Those images were sorted by name.  One of the folders was titled with the first name of CW and contained six images similar in kind to those described by CW and Kallash in his interview as being taken by Kallash of CW and later sent to CW.  These images included an image of CW inserting a vibrator into her vagina.  Other folders contained images of minor engaged in sexually explicit conduct and are child pornography as defined in 18 U.S.C. § 2256(8).

I have read the statement of facts and reviewed it with my attorney.  I acknowledge that it is true and correct.

4-2-12
_____
Date

*Joseph Anthony Kallash*
_____
Joseph Anthony Kallash

4/2/12
_____
Date

_____
Brendan A. Hurson, Esq.